UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PERRY RADFORD SR.,

  Plaintiff,

                                           CASE NO.:

-VS-

NAVIENT SOLUTIONS, INC. and
STUDENT ASSISTANCE
CORPORATION,

  Defendants.

_____/

## COMPLAINT

      COMES NOW, Plaintiff, Perry Radford Sr, by and through the undersigned counsel, and sues Defendant, Navient Solutions, Inc. ("NSI") and Student Assistance Corporation ("SAC"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

      1.     The TCPA was enacted to prevent companies like NSI and SAC from invading American citizen's privacy and to prevent abusive "robo-calls."

2.      "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).   Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet:  Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.    This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.    Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8.    The alleged violations described herein occurred in DeKalb County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.    Plaintiff is a natural person, and citizen of the State of Georgia, residing in DeKalb County, Georgia.

10.    Plaintiff is an "alleged debtor."

11.    Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.    Defendant, NSI, is a corporation which was formed in Delaware with its principal place of business located at 2001 Edmund Halley Drive, Reston, Virginia 20191 and which conducts business through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

13.    Defendant, SAC, is a corporation with its principal place of business at 12061 Bluemont Way Reston, VA 20190-5684, wherein its registered agent is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

14.    Defendants called Plaintiff on Plaintiff's cellular telephone approximately three thousand five hundred (3,500) times since April of 2014, in an attempt to collect a debt.

15.    Defendants attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

16.     Upon information and belief, some or all of the calls Defendants made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line and he received prerecorded messages from Defendants.

17.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issues, (404) ***-7985, and was the called party and recipient of Defendants hereinafter described calls.

18.     Beginning in or about April 2014, Defendants began bombarding Plaintiff's cellular telephone (404) ***-7985 in an attempt to collect/service on a student loan.

19.     On or about July 18, 2016, due to the ceaseless barrage of automated calls from Defendants, Plaintiff answered a call from Defendant, NSI, met with an extended pause, was eventually connected to a live agent/representative of

Defendant, and demanded that the Defendant, NSI, cease placing calls to his aforementioned cellular telephone number.

20.    Despite Plaintiff's demands to NSI that he no longer wished to receive calls, Defendant, NSI, continued to bombard his cellular telephone with automated calls.

21.    On or about September 20, 2016, Plaintiff answered another call from Defendant, NSI, and this time spoke to an agent known only as "Linne." Plaintiff demanded Linne to cease all calls to his aforementioned cellular telephone number.

22.     Despite his demands to Defendant, NSI that he no longer wished to receive calls, Defendant, NSI continues to bombard his cellular telephone with automated calls as of the filing of this Complaint.

23.    On or about September 19, 2016, Plaintiff answered a call from Defendant, SAC and spoke to an agent known only as "Tammy." Plaintiff informed agent/representative of Defendant, only known as "Tammy" that Defendant does not have authorization to call him and again demanded that Defendant cease placing calls to his aforementioned cellular telephone.

24.    Despite his demands to SAC that he no longer wished to receive calls, Defendant, SAC continues to bombard his cellular telephone with automated calls as of the filing of this Complaint.

6

25.    Due to the tremendous amount of calls Plaintiff received from Defendants, he was not able to properly catalogue each and every call, however attached hereto as **Exhibit A** is a log of some of the calls Plaintiff received to his cellular telephone from Defendants.

26.    Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

27.    Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendants, to remove the number.

28.    Defendants' corporate policies are structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendants they do not wish to be called.

29.    Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

30.    Defendants have numerous complaints against them across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

31.     Defendants have had numerous complaints against them from consumers across the country asking to not be called, however Defendants continue to call these individuals.

32.     Defendants' corporate policy provided no means for Plaintiff to have his number removed from Defendants call list.

33.     Defendants have corporate policies to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

34.     Not a single call placed by Defendants to Plaintiff were placed for "emergency purposed" as specified in 47 U.S.C. § 227(b)(1)(A).

35.     Defendants willfully and/or knowingly violated the TCPA with respect to Plaintiff.

36.     From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

37.     From each and every call without express consent placed by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants' call.

8

38.     From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

42.     Each and every call placed without express consent by Defendatns to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

43.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress and aggravation.

## COUNT I
### (Violation of the TCPA)
### As to NSI

44.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45.     Defendant, NSI willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified NSI that Plaintiff wished for the calls to stop

46.     Defendant, NSI repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or

prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NSI for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the TCPA)
### As to SAC

47.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

48.     Defendant, SAC willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SAC that Plaintiff wished for the calls to stop

49.     Defendant, SAC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SAC for statutory damages, punitive damages,

actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*

Octavio Gomez, Esquire
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Georgia Bar #:  617963
Primary Email:
TGomez@ForThePeople.com
Secondary Email:
LDobbins@ForThePeople.com
*Attorney for Plaintiff*